All right, you may proceed. We have two cases that are consolidated for argument because they obviously cross each other. And so, to the extent that we have different procedural postures and standards of review in each case, it would be helpful if you would tell us in making your argument if you're relating to the Habeas case or to what has now been moved to the Ninth Circuit as a petition for review from the BIA decision. Very well. Your Honors, I would actually like to use my time to make some clarifications more than anything, and also point out that I think that under the REAL-ID Act, pretty much everything is consolidated into one procedure. And I think that that was the purpose that the Congress had when they enacted the REAL-ID Act. In any event, I think that the case begins with denial of a motion to continue. I, by the way, good morning, Your Honors. I'm sorry. My name is Jan Behar, and I represent Cesar Hernandez-Gallardo. I apologize. The case begins with a denial of a motion to continue, which we believe was fully justified. And I think that in order to understand why this is justified, it is important for the Court to understand how the immigration procedure actually begins. It's very similar to any other case, criminal case, for example, where there is two stages. There's the guilt stage, and then there's the sentencing stage, if you get to that, if the person is found guilty. Similarly in immigration, you have two stages. First is the removability or deportability stage. If the person is found removable or deportable, then you move on to the relief stage. Well, there were three master calendar or semi-arraignment or status conference calendars, if you will, which are short calendars where the courtroom has 20 or 25 cases at the same time, everybody in the same courtroom. And the person's allowed maybe 5, 10 minutes to resolve the issues and then proceed to a hearing, a trial. In this situation, at the first master calendar, the government had not submitted any evidence. A continuous was granted. We denied the charges of deportability. At the second master calendar in July of 2002, the government chose to submit evidence to prove what is their burden, removability. And at that point, they submitted partial evidence. They submitted the complaint and the change of plea form, but they never submitted the sentencing. So the government argues in its brief that, geez, we weren't prepared. It's a little hard to be prepared to address documents issued to you at the time of the hearing and expect you to make an intelligent plea at that time. So, yes, we did ask for a continuance, and we did get a continuance so that we could read the papers, analyze them, see if we agreed that the person was deportable, and then come back. We returned in August. At the August hearing, the judge did make a finding that, in his opinion, my client was deportable. I disagreed, and I did not accept the charges. However, since the judge did make a ruling, I requested at that point leave for the leave of the court to address the issue of relief. Now, the government makes a big issue of the fact that at that point the judge asked whether he asked me what relief was available to my client. I said that I believed he was eligible for cancellation of removal, and at that time I also raised the fact that he might be eligible for adjustment of status through his U.S. citizen wife. The government makes a big to-do about the fact that there was no petition filed at that time. But the reality, Your Honors, is that at the master calendar hearing, the court sets a schedule, a filing schedule, which is usually 90 to 120 days later, which is plenty of time to prepare and process the petition, and then the trial date, approximately 10 or 12 months later. In fact, Judge Barrett, who heard these proceedings, is currently setting cases in July and August of 2007. So there's clearly enough time to process the documents, and the judge gives you ample time within which to file them. So, again, I'm trying to get some of the clouds out of the way, because it's important to be able to understand this in order to be consistent. At that hearing, the judge said, I don't think he's eligible for any relief. I said, well, you haven't let me brief it. I mean, this is the first time relief is even addressed. We have 30 seconds to address it, and you haven't given me any time to do that. I would like a continuance. He said, you know, I'm very clear on the law. Ordinarily, I'd give you time to brief it, but since I'm clear on the law and I don't think he qualifies for anything, that's it. I'm going to order him that is a violation of my client's due process rights. Why? Because, number one, he had a right to a continuance so that he could meaningfully address the issues before the court. And, B, he had a right to determine, now that we were at the relief stage, what relief he was entitled to and to brief it to the court. Granted, there are problems. There's no question that there are problems. Why? Because my client was convicted of two crimes, burglary of a vehicle and robbery. And the government was alleging, if I'm not mistaken, that both of them were aggravated felonies. Well, the truth of the matter is that one of them, at a very minimum, is not deemed an aggravated felony. That's under the Yee case, Y-E, which is out of this circuit. And as for the second one, I was not convinced that he was an aggravated felon. In addition, he had the right to try to obtain relief by means of his wife who was ready to file the petition. Now, is that as adjustment of status a form of relief that can be granted to an aggravated felon? Yes, Your Honor. And the reason is this. If you look at the statute, aggravated felony is a ground of deportability. It is not a ground of removability. But you couldn't get an in it. You couldn't get a discretionary waiver if you had the felony, but you're saying you could come in under the wife's citizenship? The – when a person adjusts his status, he is asking for admission. It's a legal fiction. He's asking to be admitted to the United States. He's already in the United States, so that's why it's a fiction. But, in fact, this Court held in Gabrielski that a person who was convicted of a firearms offense, which was not pardonable under the 212C statute, could apply for adjustment of status, and it was sort of a revolving door so that he would go out one side and never hit the outside, come right back in through adjustment of status through his wife, because firearms is also a ground of deportability but not a ground of inadmissibility, the same as the aggravated felony situation. The question really was going to evolve around whether my client was entitled to a waiver presuming that his crimes were crimes of moral turpitude and which require the waiver. There's certain – there's a waiver under Section 212H which has problems because of the aggravated felony. Well, that was my question. Maybe I wasn't precise enough. The question was whether, presuming the aggravated felonies, you are eligible for a discretionary waiver of inadmissibility or not. He was the – there would be some difficulties. There's got to be a yes or no answer to that. So if the answer is no. That's exactly my point. There was no yes and no answer, which is exactly why I wanted the continuous. And why is there not a yes or no answer based on the statute? Because the – because of the interpretation of the statute. And what I'd like to actually – I don't want to run out of time. What I wanted to point out to the Court with regards to aggravated felony is that – Why don't you answer my question and tell us what the problem with the statute is, because I still have no idea what you said, okay? I mean, I – we've read the statutes. We understand the scheme. The statute basically – Listen to my question again, because I want – I really want to understand it, because this is like one of those charts. If he doesn't qualify here, then he might qualify over here. You know, he has his wife over here, but he has his felonies over here. And you kind of keep drawing the lines. So I'm starting at the top with his aggravated felonies. My question is whether, under the statute, if you have aggravated felonies, whether you can get a discretionary waiver. There – it is not entirely barred. The 212H waiver does not allow you to obtain – it's not allowed to obtain a 212H waiver if you have been convicted of an aggravated felony after admission, I believe is the rule. But if you haven't been admitted, then it's – then you can obtain it. And that's one of his problems. Now, the other waiver is the 240AA cancellation waiver. Again, aggravated felony bars that. But the point that I have been trying to make is that this aggravated felony issue is a very controversial one. When armed robbery – and at this point, I think it's settled that the only. Okay. So let me just stop there. Is the problem with whether these are aggravated felonies or is the problem with whether or not a waiver is permissible? You've just told me two circumstances where, as I understand it, if the aggravated felonies were to prevail as being appropriately analyzed, a waiver would not be permissible. That's correct. I think that if, under the scenario that he was facing, if – and there's only one conviction which at this point poses a problem, which is a robbery one, because the burglar has been deemed not to be an aggravated felony. If the – it's a burglar of a vehicle, that's why. If the robbery is deemed an aggravated felony, yes, it would bar him. However, there are arguments that that is not properly an aggravated felony. And this Court has found in Peterson v. Dunbar that probation – when a – when a person is sentenced to probation and given a 365-day sentence, that jail time is not deemed punishment as part of the rehabilitative process. But isn't the problem here is that the BIA has never addressed this aggravated felony issue? Well, yeah. That's part of the problem. We can't address it until they address it. So that's what the Supreme Court has just told us. What does my client do in the meantime? Does he get deported because the BIA hasn't chosen to address it? It doesn't seem fair. And I – the point that I want to make about the aggravated felony is – He has to go back because we can't address it until the BIA addresses it. And then I think that the correct thing is for this Court to remand it to the BIA so that they will address it. Is it – is – the BIA does address – they categorize these as crimes involving moral turpitude. Yes. And they say that in the first paragraph of their decision. What – what effect does that determination have on the analysis? That's only the basis for removability. Removability. The inability to obtain the waiver stems from the aggravated felony charge, which they never charged. But they argued it, and they're entitled to say that if a person is convicted of an aggravated felony, even if not charged in the deportation case, it can be used as a shield to prevent them from applying for the relief, which is what the problem is. But didn't the BIA in this – in its opinion commit an actual error that we can review on calculating the number of years that Hernandez-Gallardo had been in the country? Yes, Your Honor. I think that's already been resolved. That's why I didn't address it. But – How has it been resolved? There were arguments in counsel's brief as well as in mine. So the government conceded that? Yes. All right. So wouldn't it be the best thing just to find that the BIA – you know, we have to review the BIA opinion because it's not a summary disposition. We don't look through it to the IJ. So looking at that, there's a legal error. We remand under Ventura. Correct. They failed to address whether the robbery conviction actually qualified as an aggravated felony. But then we'll get the answer. Correct. And then your question is, well, what happens to my client? Doesn't your client remain in the same status in the sense of not being deported with the appeal pending and the remand then pending? If that were the result. As long as the case is remanded to the Board of Immigration Appeals, then he does have the opportunity to pursue the remedy. So that would be satisfactory. And why can't your client, just while all this is going on, if he's, in fact, eligible for adjustment of status, file a petition for adjustment of status? Your Honor, in all honesty, I don't recall if the petition was filed or not. But because the case has been over here pending. But you could certainly have put something in front of the DHS by now. I believe it was. I don't want to mislead the Court. That's why I'm not telling you for sure it was filed. But nothing by the fact that it's pending in the circuit court would preclude filing on that alternative avenue. Right. But it's two steps. Two steps separate. Right. The DHS deals with a petition, determines if it's a bona fide marriage, and then the immigration court would determine whether to grant the adjustment or not. Well, if we have, I mean, the government, I thought, was quite candid in its brief about the whole determination of the seven years. If we take the government's, you know, statement at face value, what then is the remaining issue for us to decide? Whether the — well, the remaining issue is really the aggravated felony issue, which, as the Court has already stated, this Court cannot reach it until the BIA reaches it. And that raises another question. Maybe I'll just wait, and you can do it on rebuttal. Probably we'll give him a little extra time. I just want to make sure we're sorting these all out, because the Ventura remand, you know, in general, we have quite a bit of case law in which we've construed that. But I don't think we have a case exactly like this. So why don't we hear from the government? Very well, Your Honor. Thank you. Good morning. May it please the Court. Russell Verby, on behalf of Attorney General Alberto Gonzalez. Now, obviously, with the consolidation of the habeas appeal, with the transferred petition for review from the district court, all of Mr. Hernandez's constitutional and statutory claims are before this Court to be decided. And those issues can be broken down into two groups, those dealing with cancellation and removal, and those dealing with whether the immigration judge violated due process by refusing to grant a third continuance of these proceedings. Now, with respect to the application for cancellation and removal, this alien was ineligible for such relief. Mr. Hernandez has been convicted of robbery. This robbery conviction was alleged in the notice to appear as part of the factual allegations. Admittedly, the charge of removal was for having been convicted of two crimes involving moral turpitude, not an aggravated felony. But that alone doesn't change the fact that the robbery offense did indeed qualify as an aggravated felony, which barred this alien from cancellation of removal. Now, we have a huge issue with respect to whether a remand is appropriate because, unlike the immigration judge who denied this on aggravated felony grounds, the Board of Immigration Appeals decided to go with an incorrect ruling with respect to seven years of continuous lawful residence. Am I correct that we must review the BIA's decision now and not the IGF's? Absolutely, Your Honor. You are absolutely correct. So the issue of aggravated felony, is that even before us? It is not necessarily before you, and nine times out of ten, Your Honor, I would stand before you and say Ventura requires a remand. But this is probably one of the very unique situations where this court, through its authority to rule in its own jurisdiction, actually does have to reach the aggravated felony issue. Not only is there crimes involving moral turpitude that bar this court's jurisdiction, but as this court said in the Casares case, which is in my 20HA letter, you are obligated to follow your jurisdictional inquiries all the way through the end. And in this case, you have an offense on the charge sheet that would qualify as an aggravated felony, the robbery offense. And just like in Brasenio, even though it wasn't actually charged as an aggravated felony for a grounds of removability, it was on the charge sheet and can impact this court's jurisdiction. I'm not sure, since the BIA didn't actually talk about it and didn't look at the charge sheet and make that finding a fact, I would be really reluctant not to follow the Supreme Court's latest direction under Ventura remand. And, Your Honor, and I wholly agree with you. And in a remand, if we need to remand, that's really not a problem for the Attorney General. But ---- It just seems that would be the cleanest here, because otherwise we were in this odd situation where, you know, typically we wouldn't have jurisdiction over many cancellation of removal aspects. We have a very narrow. But we would have to make a determination, a legal determination about the aggravated felony based on the charge sheet. And it would be really akin to sitting here as a trial court or the BIA. And in essence, Your Honor, it's nothing this court hasn't done before. This court didn't ---- We've now been told we better not. Have been told to be very careful. And I appreciate that. And I know I'm actually ---- We're, like, a little sensitive on this issue. And half of that's my office's problem. I understand that. And I really do appreciate the Court's caution. But this is actually one of those rare situations where the Attorney General is going to say that this Court, because, like I said a few moments ago, has the authority to determine its own jurisdiction and can go beyond ---- Your Honor says that the Solicitor General wouldn't go to the U.S. Supreme Court and say, aha, another one, slap the Ninth Circuit, 9-0, summary reversal. I mean, I can't give you 100 percent guarantees of what the Solicitor G would do, Your Honor. But I can say that ---- It would depend on what our answer was. It depends. Yeah, sure. What you're running into, though, Your Honors, is a situation where you have the obligation to pursue your jurisdiction. And I'll come into the Court, its own decision in Brasenio. And then if you also look at the Casares case, which I cited, and Casares cites a decision of Alvarez at 332F3rd, which gives an excellent discussion of how Brasenio works within all this with respect to the Court's jurisdiction to determine its own jurisdiction. And once you determine your own jurisdiction and you enter and you decide, you know something, looking at that, it is a robbery. This alien, it has a ---- it requires violence or at least covers a situation where violence presents a substantial risk. And on top of this, the alien was sentenced to four years, three years suspended, serving one year. It still doesn't matter. Under any definition, that's an aggravated felony. It would affect our jurisdiction. The Court has then made the same ruling that you'd be asking the BIA to rule. And then you have tension between Ventura and Ohio v. Roberts, which would not require a feudal act. Right. And I think when you balance all that out, the quicker, easier, neater thing to do is for the Court to say, exercise our jurisdiction, determine jurisdiction. It's an aggravated felony. Why send it back to the determination we've already made? But the Ohio v. Roberts is a little different now that we have Ventura. Absolutely. And because it's this administrative process that we have. So would it be fair to say that the Attorney General wouldn't jump up and down too much if we were to remand and say, let the BIA make this decision. And then if it comes back to us, it would be on this legal issue. Yes, Your Honor. Whether or not it was correct or not. We're in the same struggle that you are with this. I can say that to the Court without revealing privilege. But I think the Court does have a basis on which to exercise its jurisdiction and end this case here without a remand. That then leaves us. That really, that issue is the cancellation and removal aspect of this appeal. Yes, Your Honor, basically. And that aggravated felony determination, which really kind of would wipe everything else off the table. Because once this alien is an aggravated felon, he's barred from cancellation and he's barred from a Section 212H waiver, which would make him, which would prevent him from once again becoming admissible, which would prevent him from adjusting his status again and would make the whole point about continuances quite moot. So the BIA probably should have rolled on the aggravated felony issue and that would have settled this case. How I wish they had, Your Honor. I'll be candid. It would have made our job for everybody here today a lot easier. But, unfortunately, sometimes you don't get what you wish for. So what we come down to is whether there's constitutional issues on this side with respect to if there is such thing as discretion, as constitutional issue with respect to a discretionary form of relief, some sort of due process violation. The immigration judge granted Mr. Hernandez a continuance request and a second continuance request and said issues with respect to removability are going to be decided at the next hearing. And, in fact, this whole case may be decided at the next hearing. And he kept the promise. Mr. Hernandez, as we know, an alien's basis for removal, as well as the factual allegations on the charge sheet, can impact the ability for relief. The immigration judge accepted pleas, made a ruling with respect to removability, and in the immigration judge's eyes that barred any application for relief. So to say there was going to be more hearings, it was unnecessary, for there had to be a continuance for more hearings with respect to cancellation and removal. And to date, Mr. Hernandez has yet to show what actual arguments was he going to use in the immigration judge's ruling with respect to an aggravated felony. Even here, we haven't been able to really nail it down. I assume it's the ones that are in his brief with respect to time of sentence awarded, whether that took this out of the aggravated felony definition. But those are disposed of fairly quickly, and hopefully the Board will dispose of them very quickly if this case does go back, or this Court could dispose of them with its own ruling on jurisdiction aggravated felony. So there is no due process violation here, much less a due process violation with one that contains prejudice. And the second set of issues is continuance for the purposes of seeking adjustment of status for a Section 212H waiver of inadmissibility. For a continuance in that particular situation, he was basically asking for time to file for the 212H waiver, which would be joined with an application for adjustment of status. This application for adjustment of status was going to be based on marriage to a U.S. citizen. Therefore, the alien had to show that he was immediately eligible, or that there was an immigrant visa immediately available to him. We don't normally wait in removal proceedings for immigrant visa processing. The only exception is the Garcia case where the alien, too, based on a marriage, get a delay of proceedings would have to actually file the petition for adjustment of status, have a petition for a visa filed on his behalf by the resident, by the citizen's spouse, and then make a prima facie showing that they are both approvable. In this situation, Mr. Hernandez, although he claims he was sandbagged, came forward, asked for a continuance, but didn't have any 212H application ready, didn't have a visa petition ready, didn't have an application for adjustment of status ready, and brought forth no evidence that his wife was even willing to submit the visa application on his behalf. In fact, brought forth no evidence that he was even married to a U.S. citizen, and that situation continued even when this case was before the Board. There was no evidence to support any basis that this alien was prepared to go forward and get a visa petition, adjustment of status, and 212H application. But as I said a few moments ago, with the aggravated felony issue disposed of, all of that would really fall by the wayside anyway. So if there are no further questions, that will end the Attorney General's presentation. Thank you. We went over your time in trying to sort out some of the issues, but I'll give you a minute for rebuttal. Very briefly, the, again, I can't overlook the fact that at one of these master calendar hearings, there are still two stages. The only thing that the judge decided and said he would decide was the removability phase. He said nothing about going forward with relief. He did say, and I may decide the case all in one hearing. Yes, but when a court sets a case and says, what are your applications for relief, and I'll give you X amount of time to file them, it's not logical that he's not going to give you the time. You don't come to an arraignment calendar with your sentencing brief already because that has, that stage has not been reached. Similarly, on an immigration court, you don't come to a master calendar with your applications for relief already to submit, with one exception, which is an asylum case, which requires that asylum applications be filed at a master calendar. But it is never the first master calendar because precisely, you go to the first one, the judge says, what are you going to do? You say, we're going to file an asylum application. Fine, come back in 60 days with your asylum application, and I will receive it. And that's all he does. He takes the asylum application, sets a trial date, gives you a time to supplement, and the case moves on. Thank you. The case just argued is submitted. Thank counsel for your arguments. We'll next hear argument in United States v. Hector.
judges: Hall, McKeown, Wardlaw